UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-----------------------------------------------------

|  |  |  |
|---|---|---|
| GAY CHANDLER, | : | |
| | : | |
| Plaintiff, | : | CASE NO. 1:18-CV-02055 |
| | : | |
| vs. | : | |
| | : | OPINION AND ORDER |
| CLEVELAND METROPOLITAN | : | [Resolving Doc. 26] |
| SCHOOL DISTRICT, ET AL., | : | |
| | : | |
| Defendants. | : | |

-----------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On September 12, 2018, Defendant Cleveland Metropolitan School District fired Plaintiff Gay Chandler. Chandler had taught at Mound Elementary School and had been a School District teacher since November 1995.

With this lawsuit, Plaintiff Chandler sues the School District and two Mound Elementary School principals, Velma McNeil and Danielle Roberts-Hunter.

The Defendants say the School District fired Chandler because of poor teaching ability and after the School District gave Chandler warnings and improvement plan opportunities. Plaintiff Chandler responds and alleges that the School District fired her in retaliation for earlier handicap accommodation requests and also discriminated against her because of her age and disability.

Defendants' motion for summary judgment is now before the Court.[1] For the following reasons, the Court GRANTS Defendants' motion.

---

[1] Doc. 26. Plaintiff opposed. Doc. 30. Defendants replied. Doc. 31.

## I.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[2]  The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[3]  Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[4]  The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[5]  But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[6]

## II.  Evidentiary Objections

As an initial matter, Defendants argue that Federal Rule of Civil Procedure 56(c) stops consideration of Plaintiff's post-deposition declaration and its exhibit.[7]

For summary judgment, a declaration must: (1) "be made on personal knowledge"; (2) "set out facts that would be admissible in evidence"; and (3) "show that the affiant . . . is competent to testify on the matters stated."[8]  This Court must disregard declarations that do not meet this standard.[9]

---

[2] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. Pro. 56(a)).
[3] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[4] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[5] *Id.* at 586.
[6] *Killion*, 761 F.3d at 580 (internal citation omitted).
[7] Doc. 31 at 5, 13.
[8] Fed. R. Civ. P. 56(c)(4).
[9] *Logan v. Denny's, Inc.*, 259 F.3d 558, 570 (6th Cir. 2001) (citation omitted).

Defendants makes two primary objections to Plaintiff's declaration. First, Defendants contend that it cannot be considered because it is inconsistent with her deposition testimony.[10] However, many of these alleged inconsistencies play no role in the Court's ruling, and the Court declines to address them.

One inconsistency is material. In Plaintiff's declaration, Plaintiff claims that Defendants Principal McNeil and Assistant Principal Roberts-Hunter allowed a student to enter Plaintiff's classroom and attack her after she complained about the School District's failure to accommodate her disability. In her declaration, Plaintiff also says Principal McNeil and Assistant Principal Roberts-Hunter failed to assist her during the attack and insufficiently disciplined the student.[11]

In contrast, at her deposition, Chandler testified that McNeil was not present at the start of the incident and that she is only "pretty sure" that Roberts-Hunter was present at the time.[12] At her deposition, Plaintiff also testified that McNeil came to Plaintiff's assistance after the attack.[13]

Given the inconsistency, the Court will not consider Plaintiff's latter assertion that Defendants McNeil and Roberts-Hunter permitted a student to enter Plaintiff's classroom and attack her without offering any assistance.

Second, Defendants object to an exhibit to Plaintiff's declaration—the "unauthenticated printouts from the Ohio School Report Cards website."[14] Specifically,

---

[10] Doc. 31 at 6.
[11] Doc. 29-1 ¶ 10.
[12] Doc. 21-1 at 130.
[13] *Id.* at 130-31.
[14] *Id.*; *see* Doc. 30-1 at 9-31.

Defendants object to the printouts as hearsay and object that they lack a foundation showing the declarant had personal knowledge.[15]

Plaintiff provides no foundation to consider the Ohio School Report Card website printouts.

The exhibit is hearsay not falling within any hearsay exception. It is a written, outside declaration offered to prove improving Mound School test scores.[16]

Finally, the website exhibit shows no foundation that the declarant has personal knowledge of student performance in Plaintiff's classes. The exhibit does not show who makes the statement. For these reasons, the printouts from the Ohio School Report Cards website are inadmissible and are not considered in determining whether summary judgment should be given.

### III.    Discussion

In November 1995, the Cleveland Metropolitan School District hired Plaintiff Gay Chandler as a substitute teacher.[17] She became a full-time teacher in 2001.[18] Plaintiff continued as a Cleveland teacher until Cleveland fired her after the 2017 – 2018 school year. The School District says it ended Chandler's employment after Chandler received an overall rating of "ineffective" for two consecutive school years. Plaintiff Chandler claims the District fired her in retaliation for her request for handicap accommodation and discriminated against her because of her age and handicap.

---

[15] Doc. 31 at 13 (capitalization altered).
[16] *See* Fed. R. Evid. 801-03.
[17] Doc. 30 at 14-15.
[18] *Id.* at 41-42.

After a two-year medical absence, Plaintiff Chandler returned to employment in fall 2016. The School District assigned Chandler to Mound Elementary School. Defendant McNeil served as Mound's principal.[19] In supervising Mound Elementary School, Principal McNeil emailed weekly school staff bulletins.[20] In these bulletins, McNeil repeatedly advised teachers should prepare and display daily lesson plans with objective learning targets, and that classroom instruction should align with the daily lesson plan.[21]

McNeil used the Teacher Development & Evaluation System ("TDES") to evaluate Mound teachers.[22] TDES uses five components for its evaluation: three "walkthroughs," with the evaluator visiting the teacher's classroom for five to fifteen minutes; one "formal announced observation," with the teacher submitting a lesson plan before the visit; and one unannounced observation.[23]

As Plaintiff Chandler's direct supervisor, Defendant McNeil evaluated Plaintiff's performance using TDES.[24] In the 2016 – 2017 school year evaluations, Principal McNeil found Plaintiff Chandler failed to prepare required daily lesson plans with objectives and assessments; failed to record useful grading information; and failed to instruct consistent with any lesson plan.[25] McNeil also observed that Chandler's gradebook had no useful

---

[19] Doc. 23-1 ¶ 4.
[20] *See* Doc. 23-2.
[21] *See, e.g.*, Doc 23-2 at 99, 143, 159, 176, 193, 210.
[22] Doc. 23-1 ¶ 5.
[23] *See id.* ¶¶ 6-7, 19.
[24] *Id.* ¶ 4.
[25] Doc. 23-6 at 17.

student information; each student's name simply had a series of checkmarks or Xs following it without reference to topics or assignments.[26]

On February 13, 2017, a student accused Plaintiff of pushing the student into a wall.[27] Plaintiff denied this allegation.[28]  The investigation found sufficient evidence supported the allegation, and Plaintiff received a reprimand letter.[29]

After another bad evaluation in April 2017, Principal McNeil met with Plaintiff and gave Plaintiff an overall "Ineffective" rating for the 2016-2017 school year.[30]

For the 2017-2018 school year, Plaintiff Chandler again received poor evaluations on all evaluation days.  In an October 2017 evaluation, Plaintiff did not have a lesson plan[31] even though she taught a class of students with Individualized Education Plans ("IEPs").[32]  In December 2017, Principal McNeil reprimanded Plaintiff for failing to complete a disabled student's IEP by the required due date.[33]  Another failure to timely complete a student's IEP occurred in April 2018.[34]

In April 2018, Plaintiff received an "ineffective" overall rating of for the 2017-2018 school year.[35]  Because the controlling collective bargaining agreement allowed termination after

---

[26] *Id.*
[27] Doc. 21-29; Doc. 21-30.
[28] Doc. 21-1 at 197-99.
[29] *Id.* ¶ 12; Doc. 23-8.
[30] Doc. 23-1 ¶ 15; Doc. 23-10.
[31] Doc. 23-12.
[32] *Id.*
[33] Doc. 23-1 ¶ 22; Doc. 23-14.
[34] Doc. 23-1 ¶ 25; Doc. 23-17.
[35] Doc. 23-1 ¶ 29; Doc. 23-21; *see also* Doc. 23-22 (final summative rating of teacher effectiveness).

two years of ineffective ratings, the School Board terminated Plaintiff Chandler's

employment as a teacher.[36]

### A. *Age-Discrimination Claims*

Plaintiff Chandler makes age-discrimination claims under the ADEA and Ohio law.[37]

"Age discrimination claims brought under the Ohio Statute are analyzed under the same

standards as federal claims brought under the ADEA."[38]  Therefore, both the ADEA and

Ohio age-discrimination claims use the same standard.

The ADEA makes it unlawful for an employer "to discharge ... or otherwise

discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).

"To win an ADEA claim, the plaintiff must show that age was more than a motivating

factor for the adverse action.  Instead, the ADEA's 'because of' language requires that a

plaintiff `prove by a preponderance of the evidence (which may be direct or circumstantial)

that age was the 'but-for' cause of the challenged employer decision.'"[39]  To establish that

the employer took the adverse action "because of age" means " that age was the 'reason'

that the employer decided to act." [40]  The plaintiff's burden does not shift to an employer

---

[36] Doc. 23-1 ¶ ¶  32-33; Doc. 23-22; Doc. 23-24.

[37] Doc. 7 ¶ ¶ 21-26, 30.

[38] *Blizzard v. Marion Tech. College,* 698 F.3d 275, 283 (6th Cir. 2012) (citing *Wharton v. Gorman-Rupp Co.,* 309 F. Appx. 990, 995 (6th Cir. 2009)) (internal quotation marks omitted); *see also City of Columbus Civ. Serv. Comm'n v. McGlone,* 697 N.E.2d 204, 206-07 (Ohio 1998).

[39] *Scheick v. Tecumseh Public School,* 766 F.3d 523, 529 (6th Cir. 2014) (quoting *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177–78 (2009)).

[40] *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 350 (2013) (quoting *Gross,* 557 U.S. at 176) (extending *Gross* to retaliation claims under Title VII).

"even when a plaintiff has produced some evidence that age was one motivating factor in that decision."[41]

A plaintiff employee can make an age discrimination claim using either direct or circumstantial evidence of age discrimination.[42]

Plaintiff Chandler suggests that she supports her ADEA claim with "direct evidence of age discrimination."[43]  She does not.

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences."[44]  "Only the most blatant remarks, whose intent could be nothing other than to discriminate" will constitute direct evidence.[45]

Determining whether a statement is direct evidence of age discrimination needs evaluation of the following factors:

> (1) whether the statements were made by a decision-maker or by an agent within the scope of his employment;
>
> (2) whether the statements were related to the decision-making process;
>
> (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and
>
> (4) whether they were made proximate in time to the [adverse employment action].[46]

---

[41]*Gross*, 557 U.S. at 180.

[42] *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 723 (6th Cir. 2012).

[43] Doc. 30 at 14-15 (capitalization altered).

[44] *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004).

[45] *Sharp v. Aker Plant Services Group, Inc.*, 726 F.3d 789, 798 (6th Cir. 2013); *see also Allen v. Highlands Hosp. Corp.*, 545 F.3d 387 (6th Cir. 2008) (holding that hospital president's statement that he intended to terminate employees on the basis of seniority did not constitute "direct evidence" of age discrimination (quoting *Wexler*, 317 F.3d at 570)).

[46] *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002) (citing *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994)).

"No single factor is necessarily dispositive and courts should 'tak[e] all of the circumstances into account.'"[47]

Plaintiff Chandler offers almost no direct evidence of age discrimination. She relies upon a remark allegedly made by School District CEO Eric Gordon at a professional development conference.[48] Chandler says Gordon made a statement to the effect that the School Board needed to get rid of veteran teachers by any means possible.[49] Gordon denies making the statement.[50]

Regarding the first and second factors, Superintendent Gordon approved the recommendation to end Plaintiff's teacher employment, and Gordon made the alleged statement within the scope of his employment. However, the statement was a vague and isolated remark, and the statement was allegedly made months before Gordon recommended that Plaintiff's employment be ended. The alleged statement is too attenuated from the decision to terminate Plaintiff Chandler to be direct evidence.

In the absence of direct evidence, discrimination can be established with circumstantial evidence. Circumstantial evidence is "proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred."[51] When a plaintiff presents circumstantial evidence, the three-step

---

[47] *Smith v. Chester Cty. Bd. of Educ.*, 218 F. Supp. 3d 619, 624 (W.D. Tenn. 2016) (alteration in original) (quoting *Peters*, 285 F.3d at 478).
[48] Doc. 21-1 at 84-87, 92.
[49] *Id.* at 84-87, 92. Defendants rightly point out that, in his moving papers, Plaintiff's counsel inappropriately depicts this statement as a quotation from Mr. Gordon, rather as than Plaintiff's interpretation of the statement. *See* Doc. 31 at 12.
[50] Doc. 25-1 ¶ 3.
[51] *Wexler*, 317 F.3d at 570.

framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) guides the court's analysis.[52]

First, the plaintiff must present evidence sufficient to establish a *prima facie* case of discrimination.[53] Second, if the plaintiff establishes the *prima facie* case, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action.[54] Third, if the employer satisfies this burden, the burden shifts back to the plaintiff to show that the employer's nondiscriminatory explanation is a pretext for discrimination.[55]

1. Hostile Work Environment Claim

To establish an ADEA *prima facie* case of hostile work environment, a plaintiff must establish by a preponderance of the evidence that

(1) he was 40 years or older at the time of the alleged harassment;

(2) he was subjected to harassment, either through words or actions, based on his age;

(3) the harassment unreasonably interfered with his work performance and created an objectively intimidating, hostile, or offensive work environment; and

(4) there is some basis for liability on the part of the employer.[56]

This burden is easily met and is not intended to be onerous.[57]

---

[52] *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 725 (6th Cir. 2012); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998).
[53] *Ercegovich*, 154 F.3d at 350.
[54] *Lefevers*, 667 F.3d at 725.
[55] *Id.*
[56] *Brown v. Metro. Gov't of Nashville & Davidson Cty.*, 722 F. App'x 520, 525 (6th Cir. 2018) (citing *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834-35 (6th Cir. 1996)).
[57] *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987); *Tx, Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Plaintiff satisfies the first prong for showing a hostile work environment claim—that she was at least 40 years of age.  She does not satisfy any of the other required showings.

Plaintiff does not show the second prong.  She does not show sufficient age related harassment.[58]

To support her age-harassment contention, Plaintiff claims that Defendants asked her whether she could handle students and asked whether she had considered retirement.[59] The questions are too non-specific to show that the harassment was age-based.[60]

Plaintiff does not show the third prong.  The Sixth Circuit uses the *Meritor*[61] standard to judge whether age related work conditions create a sufficiently hostile environment.[62] "[W]hether an environment is `hostile' or `abusive' can be determined only by looking at all the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[63]

To make out an age discrimination hostile environment harassment claim, the Plaintiff must show that the harassment was both subjectively and objectively qualifying.[64] Plaintiff Chandler must have considered the conduct harassing and a reasonable person would find hostile or abusive.

---

[58] *Brown*, 722 F. App'x at 525.
[59] Doc. 30-1 ¶¶ 16-17
[60] *Peecook v. Nw. Nat'l Ins. Grp.*, No. 96-4318, 1998 WL 476245, at *3 (6th Cir. Aug. 3, 1998) (finding plaintiff failed to establish the second prong of a *prima facie* case because one statement that "perhaps you are too old to change" was too amorphous to show the harassment was age-based)
[61] *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).
[62] *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 835 (6th Cir. 1996) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)).
[63] *Id.*
[64] *Id.*

Plaintiff Chandler fails to show evidence sufficient to support an age-related hostile work environment claim. She describes conduct insufficiently serious to objectively change her working conditions. She also fails to show evidence that she was subjectively impacted by the limited comments, even if her version of the comments could be proven.

Here, plaintiff's complaints of poor performance reviews and questions about when she would retire simply cannot be considered severe enough to constitute an abusive working environment.

2. Age-Discrimination Claim

Plaintiff separately claims that circumstantial evidence supports her claim that the Cleveland School District discharged her because of her age. To make a *prima facie* showing, the Plaintiff must show: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination."[65]

In seeking to show circumstances suggesting discrimination, Plaintiff mostly relies upon the limited comments described above. They are insufficient. Plaintiff additionally alleges that several other Mound School teachers over the age of 50 had also received "ineffective" scores. [66]

She does not, however, show that similarly situated younger teachers received "effective" scores, and she admits that she has limited knowledge about what teachers

---

[65] *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 510 (2002)).
[66] Doc. 21-1 at 177-78.

received what evaluations.[67]  To be similarly situated, Plaintiff Chandler would need show

that a younger teacher had received similar evaluations for similar teaching activities yet had

not received two ineffective scores.  Or she would need show that the Cleveland School

District did not fire some younger teacher who had received two sequential ineffective

ratings.

   Even if Chandler had made a *prima facie* case, the Defendants come forward with a

non-discriminatory justification for its actions.  The School District says it followed a standing

practice of separating teachers who receive two years of ineffective ratings.  Under

*McDonnell Douglas*, if the plaintiff makes out a *prima facie* case of age discrimination, the

defendant can articulate some legitimate, nondiscriminatory reason for the termination.  If

the School District comes forward with a nondiscriminatory justification, then Chandler must

show that the proffered reason is a pretext.

   To show pretext, Plaintiff Chandler would need show "(1) that the proffered reasons

had no basis in fact, (2) that the proffered reasons did not actually motivate [her discharge],

or (3) that they were insufficient to motivate discharge." [68]  Chandler does not show the

Cleveland School District's separation justification is pretextual.

---

[67] *Id.*  To qualify as "similarly-situated," an individual "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Adebisi v. Univ. of Tennessee*, 341 F. App'x 111, 112 (6th Cir. 2009) (quoting *Hollins v. Atl. Co.*, 188 F.3d 652, 659 (6th Cir.1999)).

[68] *Blizzard*, 698 F.3d at 285 (quoting *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012)).

Therefore, the Court GRANTS Defendants' motion for summary judgment on Plaintiff's age-discrimination claims in Counts I and II.

**B.** *Retaliation Claims*

Plaintiff's Counts II and III contain retaliation claims under Title VII and Ohio law, respectively.[69]  As with the age-discrimination claims discussed above, Ohio's retaliation law "mirrors" that of the ADEA, and, consequently, "Ohio courts have held that '[f]ederal law provides the applicable analysis for reviewing retaliation claims.'"[70]  Thus, Plaintiff's federal and state claims of retaliation are analyzed together.

Title VII's anti-retaliation provision makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made [unlawful by Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."[71]

As a first matter, Defendants argue Plaintiff's retaliation claims are barred because she did not exhaust her administrative remedies.[72]  The Court finds this argument unpersuasive.  Plaintiff alleged retaliation in the May 4, 2017, EEOC discrimination charge.[73]  Defendants do not explain why the May 4, 2017, charge does not exhaust her administrative remedies.

---

[69] Doc. 7 ¶¶ 21-26, 30.
[70] *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 510 (6th Cir. 2016) (quoting *Baker v. The Buschman Co.*, 713 N.E.2d 487, 491-92 (Ohio App. 12th Dist. 1998)).
[71] 42 U.S.C. § 2000e-3(a) (emphasis added).
[72] Doc. 26 at 23.
[73] Doc. 21-4.

Plaintiff may show Title VII retaliation "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation."[74]

Since Plaintiff has proffered no direct evidence of retaliation, the Court once more turns to the *McDonnell Douglas* evidentiary framework described above.[75]   If Plaintiff establishes her *prima facie* case, the burden of production shifts to Defendants to articulate a legitimate nondiscriminatory reason for its adverse employment action.[76]  Once it does, Plaintiff then must show that Defendants' reason is a pretext for retaliation.[77]  As earlier described, Plaintiff Chandler can show pretext by proving that the reason (1) had no basis in fact; (2) did not actually motivate Defendants; or (3) was not sufficient to warrant termination.[78]

1.   *Prima Facie* Case

To establish a prima facie case of retaliation under either federal or Ohio law, a plaintiff must show that "(1) she engaged in a protected activity, (2) the defending party was aware that the [plaintiff] had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and [the] adverse action.[79]

---

[74] *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543 (6th Cir. 2008)).
[75] *Imwalle*, 515 F.3d at 544.
[76] *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 996 (6th Cir. 2009).
[77] *Id.*
[78] *McCowen v. Village of Lincoln Heights*, 624 F. App'x. 380, 383 (6th Cir. 2015) (citing *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 597 (6th Cir. 2007)).
[79] *Blizzard v. Marion Technical College*, 698 F.3d 275, 288 (6th Cir. 2012)

In determining whether Plaintiff shows a retaliation *prima facie* case, the Court

considers each element in turn.

There is no dispute as to the first element. Plaintiff engaged in protected activity by

filing the May 4, 2017, EEOC charge against the School District.[80]

Plaintiff also satisfies the second element—that her exercise of the protected activity

was known by the defendant.[81] Though Defendants McNeil and Roberts-Hunter claim that

they did not know about the EEOC complaint until after Plaintiff was terminated,[82] Plaintiff's

sworn statements to the contrary create a material dispute of fact as to this element.[83]

Plaintiff satisfies the third element—that Defendants took an adverse employment

action against her[84]—as to Defendants School District and McNeil, but she fails as to

Defendant Roberts-Hunter. To explain the discrepancy, the Court describes what qualifies

as an adverse employment action.

In *Burlington Northern*, the Supreme Court defined adverse employment action as

one that "a reasonable employee would have found . . . materially adverse, which in this

context means [that the action would] dissuade[] a reasonable worker from making or

supporting a charge of discrimination."[85] The Court cautioned that "it is important to

separate significant from trivial harms."[86] "An employee's decision to report discriminatory

---

[80] Doc. 21-4.
[81] *Rogers*, 897 F.3d at 775.
[82] Doc. 23-1 ¶ 34; Doc. 24-1 ¶ 8.
[83] Specifically, Plaintiff avers that McNeil knew about her EEOC complaint because the EEOC notified McNeil about the charge in May 2017 when it was filed. Doc. 21-1 at 116-17. Plaintiff states that Roberts-Hunter knew about the charge in approximately May 2017, because Plaintiff overheard Roberts-Hunter discussing it. *Id.* at 126-27.
[84] *Rogers*, 897 F.3d at 775.
[85] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).
[86] *Id.*

behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."[87]  "The standard for showing a materially adverse action is not onerous."[88]

Here, Defendants McNeil and School District took adverse employment action against Plaintiff.  The School District's termination of Plaintiff's employment is, of course, an adverse employment action.  Likewise, Defendant McNeil took adverse action against plaintiff by issuing her two TDES composite scores of "ineffective" for the 2016-17 and 2017-18 school years.[89]

However, Plaintiff does not satisfy the third element as to Defendant Roberts-Hunter.  Though Plaintiff alleges that Roberts-Hunter was Plaintiff's supervisor,[90] there is no evidence that Roberts-Hunter was involved in Plaintiff's performance evaluations or termination.  The only alleged Roberts-Hunter conduct that approaches an adverse employment action would be the allegation that Roberts-Hunter made negative comments about Plaintiff to students.[91]  Even if true, this allegation does not rise to the level of an adverse employment allegation; it was merely a "petty slight[]."[92]

---

[87] Id.

[88] Henry v. Abbott Labs., 651 F. App'x 494, 504 (6th Cir. 2016).

[89] Doc. 23-1 ¶¶ 15, 29; Doc. 23-10; Doc. 23-21.  A negative performance evaluation does not generally rise to the level of an adverse employment action unless it "significantly impact[s] an employee's wages or professional advancement."  Blizzard v. Marion Tech. Coll., 698 F.3d 275, 290 (6th Cir. 2012) (quoting James v. Metro. Gov't of Nashville, 243 F. Appx. 74, 79 (6th Cir. 2007)) (internal quotation marks omitted).  The situation here falls within the exception because it rendered Plaintiff able to be terminated per the collective bargaining agreement. Doc. 23-1 ¶ 33; Doc. 23-24.

[90] Doc. 30-1 ¶ 3.

[91] Doc. 21-1 at 120.

[92] Burlington Northern, 548 U.S. at 68.

More central to her retaliation claim against Defendants School District and Principal McNeil, Plaintiff fails to show the necessary causal connection between the adverse employment action and her protected activity.[93]  To establish a causal connection under the fourth prong, a plaintiff must produce sufficient evidence from which an inference can be drawn that an adverse employment action would not have been taken had she not engaged in the protected activity.[94]

"Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."[95]  Otherwise, "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality."[96]  "[O]ther indicia of retaliatory conduct would include evidence that the plaintiff was treated differently, either less positively or more negatively, than similarly situated employees who had not exercised Title VII rights . . . or evidence that the plaintiff was subjected to closer disciplinary scrutiny after exercising Title VII rights."[97]

Regarding temporal proximity, at best Defendant McNeil could have learned of Plaintiff's EEOC complaint in May 2017, shortly after Plaintiff Chandler filed it.[98]  Defendants'

---

[93] *Rogers*, 897 F.3d at 775.
[94] *Hicks v. SSP America, Inc.*, 490 F. App'x. 781, 785 (6th Cir. 2012).
[95] *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).
[96] *Id.*
[97] *Evans v. Prospect Airport Services, Inc.*, 286 F. Appx. 889, 895 (6th Cir. 2008).
[98] Doc. 21-1 at 66-69, 116-17; Doc. 21-4.

adverse employment actions against Plaintiff did not take place until a full year later.

Specifically, McNeil assigned plaintiff a composite TDES score of ineffective in April 2018,[99]

and Defendant School District terminated Plaintiff September 2018.[100]

While the Sixth Circuit has instructed that causation may be inferred from timing

alone when the adverse employment action occurs very close to the protected activity,[101]

the temporal proximity in this case—at least 11 months—is not sufficiently close to do so

here.[102]

Equally important, the May 2017, EEOC charge was minor.  With the charge, Chandler

merely complained that the aide who had been assigned to assist her was unhelpful.

Plaintiff thus requires affirmative evidence of retaliatory conduct to establish

causality.[103]  However, Plaintiff has essentially no evidence of retaliatory conduct on the part

of the School District or Defendant McNeil.[104]  Perhaps to remedy this deficiency, Plaintiff

attempts to rely on unauthenticated printouts from the Ohio School Report Cards website

to show that Plaintiff had actually been an effective teacher when she received the TDES

score of ineffective.  But, as discussed above, these printouts are inadmissible.

Even if they were admissible, however, the evidence would not necessarily be

evidence of retaliation or show that she had been effective.  The Report Card does not

---

[99] Doc. 23-1 ¶ 29; Doc. 23-21.
[100] Doc. 23-1 ¶ 32; Doc. 23-22.
[101] *Mickey*, 516 F.3d at 525.
[102] The Sixth Circuit "has typically found the causal connection element satisfied only where the adverse employment action occurred within a matter of months, or less, of the protected activity."  *Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007) (collecting cases).
[103] *Mickey*, 516 F.3d at 525.
[104] As stated above, the Court declines to consider Plaintiff's assertion in her declaration that Defendants McNeil and Roberts-Hunter permitted a student to attack her.

address the alleged deficiencies that Principal McNeil identified in Plaintiff's TDES

evaluations, such as the failures to create and follow lesson plans.

In sum, Plaintiff has not produced sufficient evidence for a jury to reasonably infer

a causal connection between her EEOC complaint and Defendants' adverse employment

actions against her.

Because Plaintiff has failed to meet her burden to show a *prima facie* case of

retaliation under Ohio law and ADEA, the Court GRANTS Defendants' motion for summary

judgment on Plaintiff's retaliation claims in Counts II and III.

### C. *Failure to Accommodate Claim*

Plaintiff's Count IV contains disability discrimination claims under Ohio law.[105]  It is an

unlawful discriminatory practice "[f]or any employer, because of the . . . disability . . . of any

person, to discharge without just cause . . . or otherwise to discriminate against that person

with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter

directly or indirectly related to employment."[106]

To establish a *prima facie* case of disability discrimination, Plaintiff must demonstrate

that (1) she is disabled; (2) adverse employment action was taken by the employer, at least

in part, due to Plaintiff's disability; and (3) though disabled, Plaintiff could safely and

substantially perform the essential functions of the job in question.[107]

---

[105] Doc. 7 ¶¶ 38-46.
[106] R.C. § 4112.02(A).
[107] *Most v. BWXT Nuclear Operations Grp., Inc.*, 743 F. App'x 664, 667 (6th Cir. 2018) (citing *Columbus Civ. Serv. Comm. v. McGlone*, 697 N.E.2d 204, 206 (Ohio 1998)).

As to the first element, there is some evidence that Plaintiff had a qualifying disability under the Americans with Disabilities Act ("ADA").[108]  In Plaintiff's declaration, she testifies that "[t]he condition of my shoulder injury in 2016 was a temporary disability" and that "[t]he restrictions for my disability that needed to be accommodated were so that I would not need to lift my arm and to lift weight over and not push weight over 10 pounds."[109]  The doctor assigned her the following restriction: "No repetitive up and down above head."[110]  The school acknowledged that she had some limitations by assigning Plaintiff an aide.[111]

And even if Plaintiff did not have a physical impairment that substantially limited one or more major life activities, the school appears to have regarded her as impaired, thus meeting the definition of 42 U.S.C. § 12102(1)(C).  Accordingly, the Court finds at least a dispute of fact whether Plaintiff satisfies the disability first element.

Nonetheless, the Court concludes that Plaintiff is unable to satisfy the third element of her disability claim:  Though disabled, Plaintiff could not substantially perform the essential functions of the job in question.[112]

---

[108] Given the similarity between the ADA and Ohio disability discrimination law, Ohio courts look to interpretations of the ADA when deciding cases bringing federal and state disability discrimination claims. *Most*, 743 F. App'x at 666 (citing *Matasy v. Youngstown Ohio Hosp. Co., LLC*, 95 N.E.3d 744, 751 (Ohio Ct. App. 2017)).  As pertinent to this case, the ADA defines a "disability" as (i) "a physical or mental impairment that substantially limits one or more major life activities of [an] individual," or (ii) "being regarded as having such an impairment."  42 U.S.C. § 12102(1)(A), (C).

[109] Doc. 29-1 ¶¶ 4, 6.

[110] Doc. 21-5.

[111] *See* Doc. 21-1 at 55; Doc. 29-1 ¶ 7; Doc. 30-1 ¶ 7.

[112] *Most*, 743 F. App'x at 667 (6th Cir. 2018) (citing *Columbus Civ. Serv. Comm.*, 697 N.E.2d at 206).

Plaintiff argues that she could have substantially perform her job, but for her aide's refusal to assist her.[113]  Specifically, Plaintiff claims that Ms. Williams refused to sweep the floor, write on the whiteboard, hang objects on the wall, or move heavy items.[114]

Even assuming the truth of Plaintiff's allegations, aide Williams's failures have little bearing on the deficiencies in Plaintiff's teaching that resulted in her being scored as ineffective in her TDES evaluations.  The evaluator, Principal McNeil, assigned Plaintiff poor performance evaluations because Plaintiff repeatedly failed to use and display lesson plans or provide instruction to her students.[115]  Plaintiff fails to explain how the aide's failure to sweep the floor or write on the whiteboard would have improved Plaintiff's otherwise lackluster performance.

Plaintiff's claims for disability discrimination fail because she did not show that she could perform the essential functions of her job, regardless of her requested accommodation.  Therefore, Defendants' motion for summary judgment is GRANTED as to Count IV.

---

[113] Doc. 21-1 at 56.
[114] *See* Doc. 29-1 ¶ 7.
[115] Doc. 23-1 ¶¶ 15, 29; Doc. 23-10; Doc. 23-21; *see also* Doc. 23-22 (final summative rating of teacher effectiveness).

## IV. Conclusion

For the foregoing reasons, this Court **GRANTS** Defendants' motion for summary

judgment.


IT IS SO ORDERED.



Dated: September 13, 2019                    *s/          James S. Gwin*
                                             JAMES S. GWIN
                                             UNITED STATES DISTRICT JUDGE